*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-1473

MATTHEW ROGERS, APPELLANT,

V.

ADVANCE BANK, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAR-3260-12)

(Hon. Craig Iscoe, Trial Judge)

(Submitted November 25, 2014                    Decided March 5, 2015)

*Charles C. Iweanoge* was on the brief for appellant.

*Matthew Cohen* was on the brief for appellee.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and KING, *Senior Judge.*

KING, *Senior Judge*:   Appellant, Matthew Rogers ("Rogers"), appeals from the trial court's decision granting summary judgment to Advance Bank, appellee, on a complaint for breach of contract, judicial foreclosure, and/or judicial sale. Rogers argues that the court erred in granting the motion without first requiring that the parties participate in mediation pursuant to D.C. Code § 42-815 (b)

and § 815.02 (2012 Repl.). After review of the record and relevant statutory provisions, we conclude that summary judgment was proper in this case. In short, we are satisfied that mediation is not specifically required[1] when ordering a judicial sale pursuant to D.C. Code § 42-816 (2012 Repl.). Accordingly, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

On April 12, 2012, Advance Bank filed a complaint against Rogers and four other defendants alleging fraud, unjust enrichment, and conspiracy in applying for a residential mortgage loan used by Rogers to purchase a home in the northwest quadrant of the city. Advance Bank claimed that Rogers intentionally submitted false documentation regarding his income, employment, and education when he applied for the residential loan and also certified that information by signing loan documents at the closing. On December 5, 2012, Advance Bank filed an amended complaint against Rogers, which added a claim for breach of contract to the already existing claims. At that point in the proceedings, all of the other defendants had been dismissed from the case. Subsequently, Advance Bank filed a

---

[1] While mediation is not required in these circumstances, we think it is well within a reasonable exercise of its discretion for the court, as it did here, to order the parties to engage in mediation.

motion for partial summary judgment for the breach of contract and fraud claims. On January 25, 2013, the court granted the motion for partial summary judgment on the breach of contract claim in the amount of $720,887.00 (the original amount of the loan), but denied the motion regarding the fraud claim. However, Advance Bank asserted that it was owed an additional amount of $64,555.96 for interest, late fees, and escrow advances. The court reserved judgment with respect to the additional amount because Rogers asserted that there was a genuine dispute of material fact regarding it.

On July 2, 2013, Advance Bank filed a third amended complaint seeking the additional sum of $64,555.96 discussed above. The amended complaint alleged breach of contract, judicial foreclosure, and/or judicial sale in the alternative. On July 23, 2013, Advance Bank filed a motion for summary judgment and argued that judicial foreclosure was appropriate because there were no disputed facts regarding Rogers' default. Both parties attended an unsuccessful, court-ordered mediation session, which took place on September 17, 2013. On November 18, 2013, the court granted the summary judgment motion as to the breach of contract claim finding that there was no disputed fact that Rogers defaulted on the residential loan and promissory note, which was evidenced by the record and his admission. The court also granted summary judgment for the judicial sale claim,

finding that it held the statutory authority under D.C. Code § 42-816.[2]  Although there existed a power of sale provision in the deed of trust, which Advance Bank could have used to initiate foreclosure proceedings under § 42-815, the court found that a judicial sale was appropriate in light of Rogers' opportunity to fully litigate the case; opportunity to participate in a mediation session;[3] and knowledge that foreclosure would eventually occur.  The court ordered the sale of the property and Rogers to pay Advance Bank $96,198.78 in additional fees.  This appeal followed.

## DISCUSSION

We review a granting of summary judgment *de novo*, making an independent review of the record in the same manner as the trial court does when initially considering the parties' motions.  *Holland v. Hannan*, 456 A.2d 807, 814

---

[2]  Section 42-816 authorizes the court to order a judicial sale instead of a judicial foreclosure. "A suit for judicial foreclosure to enforce a lien on real property is historically an equitable action," *Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 506 (D.C. 1994), "which involves an adjudication of the parties' rights and obligations before any property is sold." *Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 548 A.2d 87, 88 n.1 (D.C. 1988).

[3]  As previously mentioned, the parties attended a court-ordered mediation session on September 17, 2013.  The mediation session was not successful and Rogers argues that the session did not comply with the requirements of § 42-815.02 because it was not geared toward loss mitigation, which provides the homeowner with alternative options for curing the mortgage default in lieu of foreclosure.  D.C. Code § 42-815.02 (a)(5) (2012 Repl.).

(D.C. 1983) (citing *Wyman v. Roesner*, 439 A.2d 516, 519 (1981)).  Our role is not that of a factfinder, but only to determine whether there exists a "genuine issue of material fact on which a [reasonable] jury could [have found] for the non-moving party." *Id*. at 814-15.  The burden rests with the moving party to prove that there is no genuine issue of material fact, after reviewing the evidence in the light most favorable to the non-moving party.  *Id*. at 815.  If that burden is met, "the moving party is entitled to entry of judgment as a matter of law" and "[w]e will affirm the entry of summary judgment . . . ."  *Id*. at 814; Super. Ct. Civ. R. 56 (c).

Rogers argues that the court erred in granting Advance Bank's motion for summary judgment because the mediation requirement set forth in § 42-815 (b) and § 42-815.02 (b) was not satisfied.  Although the parties participated in court-ordered mediation, Rogers argues that it was inadequate because it was not the type of loss-mitigation mediation required by § 42-815.02, which requires the lender to attempt to reach an agreement that would mitigate the borrower's loss by providing other options in lieu of foreclosure.  D.C. Code § 42-815.02 (a)(5).  The loss-mitigation meditation Rogers refers to could include discussion of the "renegotiation of the terms of a borrower's residential mortgage, loan modification, refinancing, short sale, deed in lieu of foreclosure, and any other options that may be available."  *Id*.  Rogers claims that Advance Bank's summary

judgment motion requesting judicial foreclosure and/or judicial sale under § 42-816 circumvented the requirements in § 42-815 (b) and § 42-815.02, and that § 42-816 does not apply to residential mortgages. Advance Bank argues that there is no mediation requirement under § 42-816 and the court correctly ordered judicial sale after weighing the equities. In order to resolve this issue, we must determine the statutory construction and history of the relevant provisions.

D.C. Code § 42-815 (b) states in relevant part:

> In the case of a residential mortgage . . . a foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument, shall not take place unless the holder of the note secured by the deed of trust, mortgage, or security instrument, or its agent, shall: give written notice of default on a residential mortgage . . . send a copy of the notice . . . and obtain a mediation certificate[4] in accordance with § 42-815.02[5]

D.C. Code § 42-816 states in relevant part:

---

[4] D.C. Code § 42-815.02 (a) (7) (2012 Repl.) defines "mediation certificate" as "a document issued by the Commissioner to the lender evidencing compliance with the mediation requirements of this act."

[5] D.C. Code § 42-815.02 (b) (2012 Repl.) states, "Notwithstanding the provisions of any other law, after a notice of default of a residential mortgage has been given pursuant to § 42-815 (b) (1), the lender shall engage in mediation if the borrower elects . . . ."

> In all cases of application to said court to foreclose any mortgage or deed of trust, the equity court shall have authority, instead of decreeing that the mortgagor be foreclosed and barred from redeeming the mortgaged property, to order and decree that said property be sold and the proceeds be brought into court to be applied to the payment of the debt secured by said mortgage . . . .

These statutes were enacted by Congress in 1901. In 2001, the District of Columbia Council repealed both statutes by enacting the "Protections from Predatory Lending and Mortgage Foreclosure Improvements Act of 2000." D.C. Council Comm. on Econ. Dev., Report on Bill 13-800 at 1 (2000). The Act's purpose was to "update the District's century-old mortgage foreclosure law to provide consistency, finality, and borrower protections in the mortgage foreclosure process" etc. *Id*. In 2002, § 42-815 and § 42-816 were revived when the Council enacted the "Home Loan Protection Act of 2002," which repealed the 2001 "Predatory Lending and Mortgage Foreclosure Improvements Act." D.C. Council Comm. on Consumer and Regulatory Affairs, Report on Bill 14-515 at 1, 35 (2002). Again, the Council's goal was to prevent predatory lending practices and ensure that foreclosures were "monitored under the old foreclosure laws," respectively § 42-815 and § 42-816. *Id*. at 35.

Finally, in 2011, upon recognition that the foreclosure laws still did not provide adequate protection from predatory foreclosures, the Council enacted the "Saving D.C. Homes from Foreclosure Amendment Act of 2010," which amended § 42-815 by requiring lenders and home owners to participate in mediation prior to foreclosure. D.C. Council Comm. on Consumer and Regulatory Affairs, Report on Bill 18-691 at 2, 5 (2010). This meant that for any foreclosure "under a power of sale provision in any deed of trust, mortgage, or other security instrument" a lender had to issue a default notice in addition to the foreclosure notice and obtain a mediation certificate. D.C. Code § 42-815 (b). The mediation requirement was meant to ensure that foreclosure procedures were no longer "perfunctory routine decisions" made by lenders without regard for the impact on families and communities. D.C. Council Comm. on Consumer and Regulatory Affairs, Report on Bill 18-691 at 7-8 (2010). This amending act did not cause any changes to the law of judicial sales and judicial foreclosures under § 42-816.[6] *Id.*

---

[6] *See also* D.C. Code § 42-815.04 (2012 Repl.), referring to the "Saving D.C. Homes From Foreclosure Clarification and Title Insurance Clarification Amendment Act of 2013," which amended § 42-815.01 *et. seq.* and states "the act shall not apply to actions for judicial foreclosure under § 42-816."

We are satisfied, based on the unambiguous language in both statutes,[7] that § 42-815 controls when dealing with "power of sale" foreclosures under an instrument such as a deed of trust and § 42-816 refers to judicial sales, where the sale is requested by a lender then ordered by the court or an officer acting under court order. *See Huffines v. Am. Sec. and Trust Co.*, 71 F.2d 345, 348 (D.C. Cir. 1934). "Power of sale" foreclosures are referred to as non-judicial foreclosure and are initiated privately by the mortgagor/lender. *See Leake v. Prensky*, 798 F. Supp. 2d 254, 256 (D.D.C. 2011) ("The District of Columbia is a non-judicial foreclosure jurisdiction, which allows foreclosure pursuant to a 'power of sale provision contained in any deed of trust.'"(quoting D.C. Code § 42–815)). In short, non-judicial foreclosures are private debt collection procedures conducted without participation by the court. *Pappas v. E. Sav. Bank, FSB*, 911 A.2d 1230, 1237 (D.C. 2006) (foreclosure pursuant to power of sale clause in a deed of trust did not constitute governmental action to warrant due process requirements). Thus it is clear to us that the Council understandingly intended to protect District residents from predatory practices by mortgagees because of the lack of oversight during the

---

[7] "The initial step in statutory interpretation is to 'first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning' while construing the words in their "ordinary sense and with the meaning commonly attributed to them.'" *Dobyns v. United States*, 30 A.3d 155, 159 (D.C. 2011) (quoting *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C. 1983) (en banc)).

non-judicial foreclosure process. Judicial sales under § 42-816, however, are wholly different from non-judicial foreclosures because of the court's involvement in the process, which reduces the risk of error and predatory foreclosure practices. Therefore, § 42-816 authorizes the court to order a judicial sale and there is no mediation requirement.

In this case, Advance Bank filed its third amended complaint alleging breach of contract, judicial foreclosure, and/or judicial sale in the alternative. The court granted the motion for summary judgment finding that there was no genuine dispute of material fact that Rogers defaulted on the loan or to the amount he owed. As to the judicial sale under § 42-816, the court found that a mediation certificate was not required before exercising its statutory authority. We agree that the medication requirement expressed in § 42-815 is not applicable to judicial sales pursuant to § 42-816. Therefore, the trial judge correctly granted the motion for summary judgment.

Rogers argues that granting a judicial sale circumvents the requirements set forth in § 42-815 *et. seq.*, particularly the mediation requirement. This argument fails to take into account the protections provided by § 42-816 through the court's role in the foreclosure process. Although mediation is not required for a judicial

sale, there exists judicial oversight, which embodies the Council's intent in amending § 42-815 (b) to include the mediation requirement. In any event, Rogers was provided with the same protections of § 42-815 because the parties participated in a court-ordered mediation in addition to the protections provided by § 42-816. We conclude that judicial sales pursuant to § 42-816 are not a means for bypassing the requirements in § 42-815, but are only alternative procedures for lenders seeking action with the court for a defaulted mortgage loan.

Finally, Rogers argues that judicial sales under § 42-816 only apply to commercial mortgages. He cites no authority in support of that argument and there is no basis, in the statute itself or in the legislative history, for concluding that the Council intended any such limitation on judicial sales. The fact that § 42-816 was repealed by the "Protections from Predatory Lending and Mortgage Foreclosure Improvements Act of 2000," then revived by the "Home Loan Protection Act of 2002" also provides support for our conclusion that it is applicable to residential mortgages. Accordingly, for the foregoing reasons, the judgment of the trial court is

*Affirmed.*